UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

**MEMORANDUM & ORDER**
24-CR-246 (WFK)

DARNEL DAVIS,

Defendant.
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On July 9, 2025, Defendant waived indictment and pled guilty to a two-count Superseding Information, charging him with: (1) Misuse of Government Seals, in violation of 18 U.S.C. § 1017 ("Count One"); and (2) Conspiracy to Steal Government Funds, in violation of 18 U.S.C. § 371 ("Count Two"). Plea Agreement ¶ 1, ECF No. 35. The Court now sentences Defendant and provides a complete statement of reasons, pursuant to 18 U.S.C. § 3553(c)(2), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is sentenced to: twenty-one (21) months' imprisonment; two years' supervised release with the standard conditions of supervision, excepting the mandatory drug-testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d); a forfeiture money judgment in the amount of $16,763.28, as set forth in the Order of Forfeiture; restitution in the amount of $13,449.56, as agreed to by the parties on the record at sentencing; and a $200.00 mandatory special assessment.

## I. BACKGROUND

### A. Misuse of Government Seals

Beginning in June 2015, Defendant worked as an employee of an international airline (the "Airline") at John F. Kennedy International Airport in Queens, New York. Sealed Presentence Investigation Report ("PSR") ¶ 4. At the same time, Defendant served as a soldier in the United States Army Reserve based in Staten Island, New York. *Id.* On October 16, 2019, Defendant notified the Airline he had been ordered to report for active-duty training with the Army Reserve from February 20, 2020, to March 28, 2021. *Id.* ¶ 5. Defendant's last known day working for the Airline in person was January 26, 2020. *Id.*

From March 24, 2021, until his suspension on June 6, 2023, Defendant engaged in a scheme to defraud the Airline by submitting fictitious military orders purporting to extend his

active-duty training. See *id.* ¶¶ 5–13. On March 24, 2021, Defendant provided the Airline his first fake military order purporting to extend his military leave to September 2, 2021. *Id.* ¶ 6. On September 2, 2021, Defendant provided the Airline a second fake military order purporting to extend his military leave to October 15, 2021. *Id.* ¶ 7. On October 17, 2021, Defendant provided the Airline a third fake military order purporting to extend his military leave to March 1, 2022. *Id.* ¶ 8. On February 28, 2022, Defendant provided the Airline a fourth fake military order purporting to extend his military leave to September 15, 2022. *Id.* ¶ 9. On September 13, 2022, Defendant provided the Airline a fifth fake military order purporting to extend his military leave to May 2, 2023. *Id.* ¶ 10. And on April 30, 2023, Defendant provided the Airline a sixth fake military order purporting to extend his military leave to December 2, 2023. *Id.* ¶ 11.

These fictitious orders enabled Defendant to maintain his employment with the Airline and to continue receiving employee benefits. *Id.* ¶ 12. Defendant used his employee benefits to obtain free or discounted flight rates for himself and others, resulting in a loss to the Airline of nearly $3,000.00. Sealed Addendum to the PSR ("Addendum to PSR") at 1, ECF No. 50. Defendant himself travelled on nearly 250 flights operated by the Airline at these employee-exclusive discounted rates. PSR ¶ 13.

### B. Conspiracy to Steal Government Funds

In addition to the foregoing, between June 2022 and March 2023, Defendant, together with others, participated in a scheme to steal checks issued by the United States Treasury and intended for delivery in the Eastern District of New York. *Id.* ¶¶ 14–15. Defendant and his co-conspirator cashed, or attempted to cash, at least ten Treasury checks, the aggregate value of which was approximately $48,477.61. *Id.* ¶ 16. To cash these checks, Defendant and his co-conspirator travelled to multiple branches of a check-cashing business in Colorado and

2

Washington, including boarding a flight operated by the Airline to return from Seattle, Washington, to Queens, New York. *Id.* ¶¶ 15, 20. Defendant and his co-conspirator presented to the check-cashing business fake New York State driver's licenses featuring the real names and addresses of the checks' intended recipients but including photographs of Defendant or his co-conspirator. *Id.* ¶ 15. Although the individual victims were reimbursed so as not to incur any personal losses, the illegal check-cashing scheme resulted in actual losses to the check-cashing business or its bank of $17,103.64. Addendum to PSR at 1.

### C.   Procedural History

On May 17, 2024, Defendant was arrested. PSR ¶ 24. On June 11, 2024, a United States grand jury sitting in the Eastern District of New York returned an Indictment charging Defendant with six counts of wire fraud, in violation of 18 U.S.C. § 1343. Indictment, ECF No. 9.

On July 9, 2025, Defendant waived indictment and pled guilty to a two-count Superseding Information, charging him with: (1) Misuse of Government Seals, in violation of 18 U.S.C. § 1017 ("Count One"); and (2) Conspiracy to Steal Government Funds, in violation of 18 U.S.C. § 371 ("Count Two"). On July 18, 2025, consistent with Defendant's plea agreement, the Court ordered a forfeiture money judgment in the amount of $16,763.28. Order of Forfeiture, ECF No. 40; *see also* Plea Agreement ¶ 6, ECF No. 35.

## II. LEGAL STANDARD

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court

3

the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

### III. ANALYSIS

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first Section 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### 1. *Family and Personal Background*

Defendant was born on July 2, 1990, in Brooklyn, New York. PSR ¶ 53. Defendant's parents separated when Defendant was two or three years old. *Id.* ¶ 55. Defendant's father is a

retired superintendent and electrician in his seventies; he lives in Brooklyn and is in good health. *Id.* ¶ 53. Although Defendant has a good relationship with his father, his father is unaware of the instant offense. *Id.* Defendant's mother is sixty years old and receives social security disability income. *Id.* She lives in Queens, New York, and is in relatively good health, having underwent a kidney transplant approximately two decades ago. *Id.* Defendant has a close relationship with his mother, who is aware of the instant offense and supportive of him. *Id.*

Defendant grew up in Brooklyn and was raised primarily by his mother and stepfather, who is a retired truck driver. *Id.* ¶ 55. Like his father, Defendant's stepfather is unaware of the instant offense. *Id.* Defendant reports having a good childhood: his basic needs were met, and he did not experience any physical abuse, emotional abuse, or substance abuse at home. *Id.* Defendant grew up with two maternal half-brothers and remains close to both. *Id.* ¶¶ 55–56.

Defendant has been in a long-term relationship with his current romantic partner, with whom he shares a young son. *Id.* ¶ 56. Defendant's romantic partner has three children from a prior relationship; Defendant played a role in raising his partner's children and has a good relationship with each of them. *Id.* Defendant's romantic partner is aware of the instant offense and supportive of him. *Id.*

    2.    *Educational and Employment History*

In 2008, Defendant graduated from Queens Vocational Technical High School in Long Island City, New York. *Id.* ¶ 67. In 2024, Defendant attended virtual classes at South College in Knoxville, Tennessee, and completed two to three semesters before disenrolling due to financial aid issues. *Id.* Defendant is currently attending the American Academy McAllister Institute in New York, New York, and majoring in mortuary science. Upon graduating, Defendant plans to

work in a funeral home, aspiring to own and operate his own funeral home one day. *Id.*; *see also* Sealed Def. Sent'g Mem. at 5, ECF No. 48.

In 2013, Defendant joined the U.S. Army, achieving the rank of Sergeant and receiving the following awards: Army Achievement Medal, Army Reserve Component Achievement Medal, National Defense Service Medal, Global War on Terrorism Expeditionary Medal, Global War on Terrorism Service Medal, Army Service Ribbon, and Armed Forces Reserve Medal. *Id.* ¶ 77. From February 2020 to March 2021, Defendant was deployed to Kuwait as a mortuary specialist, preparing the bodies of fallen soldiers for their burials at home. Def. Sent'g Mem. at 4. Apart from his military service, Defendant has worked various jobs, including as an EMT, a city mortuary technician, a dietary assistant, an independent contractor, and an airport ramp agent. *Id.* ¶¶ 69–77.

    3. *Prior Convictions*

Defendant has two prior convictions for fraud-related offenses. On January 17, 2023, Defendant was sentenced by a Pennsylvania state court to one year of probation for committing access device fraud. *Id.* ¶ 45. On January 16, 2024, Defendant was sentenced by a California state court to one year of probation for identity theft. *Id.* ¶ 46. These convictions generate a criminal history score of two, resulting in a criminal history category of II. *Id.* ¶ 47.

    4. *Physical and Mental Health*

Defendant suffers from scoliosis and plantar fasciitis. *Id.* ¶ 60. In 2004, he underwent an appendectomy. *Id.* ¶ 61. In 2023, Defendant was diagnosed by the United States Army with post-traumatic stress disorder, for which he is prescribed trazadone, and for which he also received mental health treatment from December 2024 to February 2025. *Id.* ¶ 63. In 2024, he underwent a thyroidectomy. *Id.* ¶ 61.

   5. *Substance Abuse*

Defendant only consumes alcohol socially and denies any history of drug use. *Id.* ¶¶ 65–66. Probation recommends excusing Defendant from the mandatory drug-testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d). Sealed Prob. Sent'g Rec. at 3, ECF No. 42-1.

   6. *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second Section 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved creating fake documents bearing the seal of the United States Army to fraudulently extend his military leave and to maintain access to his employee benefits. With these benefits, Defendant travelled for free or at discounted rates on nearly 250 flights to various destinations. In some of these destinations, Defendant cashed or attempted to cash stolen Treasury checks intended for victims whose identities Defendant also stole. *See supra* Part I. The Court's sentence will deter others from engaging in similar acts and justly punish Defendant for his crimes. The Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

7

### C.     The Kinds of Sentences Available

The third Section 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Misuse of Government Seals, in violation of 18 U.S.C. § 1017, and to Conspiracy to Steal Government Funds, in violation of 18 U.S.C. § 371. Plea Agreement ¶ 1. For each count, he faces a statutory maximum term of five years' imprisonment and no minimum term. *See* 18 U.S.C. §§ 371 and 1017. He also faces a statutory maximum term of three years' supervised release. 18 U.S.C. § 3583(b)(2). If he violates a condition of supervision, he may be sentenced to up to two years' imprisonment without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(b) and (e). Additionally, for each count, Defendant is eligible for between one- and five-years' probation. 18 U.S.C. § 3561(c)(1). Unless extraordinary circumstances exist, one of the following must be imposed as a condition of probation: a fine, restitution, or community service. 18 U.S.C. § 3563(a)(2).

As to monetary sanctions, Defendant faces a maximum fine of $250,000.00 for each count. 18 U.S.C. § 3571(b). He owes a forfeiture money judgment in the amount of $16,763.28, as set forth in his plea agreement and in the Order of Forfeiture. *See supra* Part I. Finally, the Court is required to impose a mandatory special assessment of $100.00 per count, for a total of $200.00 in this case. 18 U.S.C. § 3013(a)(2)(A).

### D.     The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth Section 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

8

Defendant pled guilty to Count One (Misuse of Government Seals) and Count Two (Conspiracy to Steal Government Funds) of the Superseding Information. PSR ¶ 1. Under U.S.S.G. §3D1.2(d), these counts are grouped because "the offense level [of each] is determined largely on the basis of the total amount of harm or loss." Because the applicable Guideline for Count One is U.S.S.G. §2B1.1 and the applicable Guideline for Count Two is U.S.S.G. §2X1.1—which directs the Court to U.S.S.G. §2B1.1—the applicable Guideline for the grouped counts is U.S.S.G. §2B1.1. The ultimate offense level corresponds to the aggregate harm of the grouped conduct. U.S.S.G. §3D1.3(b).

Applying U.S.S.G. §2B1.1, Defendant has a base offense level of six because neither Count One nor Count Two carries a statutory maximum term of 20 or more years' imprisonment. U.S.S.G. §2B1.1(a). Six offense levels are added because Defendant's conduct resulted in losses greater than $40,000.00 but less than $95,000.00. U.S.S.G. §2B1.1(b)(1)(D). Two offense levels are added because Defendant's conduct involved ten or more victims. U.S.S.G. §2B1.1(b)(2)(A)(i). Two more offense levels are added because Defendant's conduct involved the production of an "authentication feature" and "the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification." U.S.S.G. §2B1.1(b)(11)(B)(ii) and (C)(ii). Three offense levels are subtracted because Defendant timely accepted responsibility. U.S.S.G. §3E1.1(a)–(b). These adjustments result in a total offense level of 13.

A total offense level of 13 and a criminal history category of II results in a Guidelines range of 15–21 months' imprisonment. U.S.S.G. §5A. Probation recommends a bottom-of-the-Guidelines sentence of 15 months' imprisonment; two years' supervised release; and a $200.00 mandatory special assessment. Sealed Prob. Sent'g Rec. at 1, ECF No. 174-1.

The Government recommends a top-of-the-Guidelines sentence of 21 months' imprisonment and restitution in the amount of $13,449.56. Gov't Sent'g Mem. at 1, 8–9, ECF No. 49. Although the Government recognizes Defendant's "prior military service, including his deployment to Kuwait as a mortuary specialist, as well as the mental and physical injuries he incurred from these experiences," it considers "this no excuse for taking advantage of his position in the military and cashing checks that did not belong to him." *Id.* at 8.

Defense counsel recommends a below-Guidelines sentence of three years' probation, including six months' home confinement and restitution. Def. Sent'g Mem. at 1, 7. Defense counsel argues the "applicable fraud guideline, U.S.S.G. §2B1.1, is empirically unfounded and routinely generates advisory sentencing ranges that exceed what is necessary to punish a defendant." *Id.* at 2. Defense counsel further argues that, since becoming a parent, Defendant is "dealing with his past traumas and new responsibilities in a more productive way[,]. . . [including] start[ing] therapy for his PTSD, enroll[ing] in school, work[ing] at a nursing home, and embrac[ing] his responsibilities as a new father." *Id.* at 4–5, 7. Defense counsel submits letters of support from Defendant's romantic partner, mother, and various family, friends, coworkers, and fellow soldiers. *See* Exs. to Def. Sent'g Mem., ECF No. 48-1.

The Court appreciates the sentencing arguments raised by all parties and has thoroughly considered each in turn.

### E.     Pertinent Policy Statement(s) of the Sentencing Commission

The fifth Section 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). The parties have not drawn the Court's attention to any pertinent policy statements. Finding none on its own, the Court proceeds to the next Section 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth Section 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other Section 3553(a) factors, Defendant's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

The seventh and final Section 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. As to Count One, the Government states the Airline has declined to file a financial affidavit requesting restitution. Gov't Sent'g Mem. at 8. As to Count Two, the Government states the check-cashing business has filed a financial affidavit specifying losses in the amount of $13,449.56. *Id.* Pursuant to 18 U.S.C. § 3664(d)(5), the Court reserves its right to hold an evidentiary hearing within ninety (90) days of this sentencing to determine the specific amounts owed to Defendant's victims.

## IV. CONCLUSION

For the reasons set forth above, the Court sentences Defendant to: twenty-one (21) months' imprisonment; two years' supervised release with the standard conditions of supervision, excepting the mandatory drug-testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d); a forfeiture money judgment in the amount of $16,763.28, as set forth in the Order of Forfeiture; restitution in the amount of $13,449.56, as agreed to by the parties on the record at sentencing; and a $200.00 mandatory special assessment. This sentence is sufficient but not

11

greater than necessary to accomplish the purposes of Section 3553(a)(2). The Court does not impose a fine considering Defendant's apparent inability to pay.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and Addendum thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

**SO ORDERED.**

**s/WFK**

HON. WILLIAM F. ~~KUNTZ~~, II
UNITED STATES DISTRICT JUDGE

Dated:   December 10, 2025
         Brooklyn, New York